# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| WENDELL D. PARKER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 1:16-CV-437-TLS |
| Acting Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

The Plaintiff, Wendell D. Parker, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits. The Plaintiff alleges that his disability began on February 23, 2012. An Administrative Law Judge (ALJ) conducted a hearing in May 2015, at which the Plaintiff—who was represented by an attorney—and a vocational expert (VE) testified. On July 10, 2015, the ALJ found that the Plaintiff has severe impairments of obesity and hypersomnia with obstructive sleep apnea requiring tracheostomy. However, the ALJ ultimately concluded that the Plaintiff is not disabled because he can perform a limited range of sedentary work. On October 26, 2016, the Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. The Plaintiff then initiated this civil action for judicial review of the Commissioner's final decision.

## ALJ DECISION (FIVE-STEP EVALUATION)

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R.

§ 404.1520(a)(4)(i)-(v). A disability under the Social Security Act is defined as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An applicant must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."
*Id.* § 423(d)(2)(A).

The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so he moved on to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments. An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff's severe impairments are obesity and hypersomnia with obstructive sleep apnea requiring tracheostomy. The ALJ found that the Plaintiff's hypertension, asthma, GERD, and diabetes were not severe and did not cause more than minimal limitations on work-related activities. The ALJ concluded that there were no significant objective medical findings to support the Plaintiff's complaints of back pain, and that his anxiety and depression were not severe.

At step three, the ALJ considered numerous impairment listings to determine whether the Plaintiff had an impairment, or combination of impairments, that meets or medically equals the severity of one of the impairments listed by the Administration as being so severe that it

2

presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that the Plaintiff's impairments did not meet or equal a listed impairment.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. In arriving at the RFC, the ALJ acknowledged that the Plaintiff is clinically obese and has been diagnosed with hypersomnia with sleep apnea. The ALJ determined that due to these impairments and his nonsevere impairments, considered singly and in combination, the Plaintiff was not able to sustain the lifting and carrying requirements of light or greater exertional work. Therefore, he was limited to sedentary work as defined in 20 C.F.R. § 404.1567(a). The Plaintiff's severe impairments also restricted him to sitting at least six hours in an eight-hour workday, standing or walking two hours, and lifting, carrying, pushing, and pulling ten pounds frequently and occasionally. His impairments further restricted him to occasional crouching, crawling, kneeling, use of stairs and ramps of one to two flights at a time, bending and stooping. However, he could frequently balance. The ALJ determined that the Plaintiff would not be able to drive motor vehicles and forklifts or work within close proximity to open and dangerous machinery or open and exposed heights. He could not work outside, or have concentrated day-to-day exposure to excessive amounts of airborne particulate, dust gases and fumes, or extreme heat and cold. Finally, the tasks he performed could not require prolonged conversation.

The ALJ did not believe that the objective physical record supported the severity of the symptoms that the Plaintiff alleged but, rather, that the impairments required no more restrictions than those listed in the RFC. According to the ALJ, providers had noted that the Plaintiff had

3

more energy and was sleeping better since his tracheostomy, which had been performed in January 2013. A May 2013 sleep study also showed that the Plaintiff's severe obstructive sleep apnea syndrome had improved with tracheostomy. Imaging of his chest showed no acute disease. Although the Plaintiff was clinically obese (he weighed 404 pounds and had a Body Mass Index of 53.31)[1], exams showed normal deep tendon reflexes, normal extremities, normal gait, clear lungs, unlabored respirations, no wheezing or rhonchi, normal heart, 5/5 strength in lower extremities, and ability to walk on heels, toes, and tandem walk. (R. 20 (citing10/24/13 consultative exam & 1/30/15 treatment notes).)

Once the RFC is established, the ALJ uses it to determine whether the claimant can perform his past work and, if necessary, whether the claimant can perform other work in the economy. 20 C.F.R. § 416.920. At this final step of the evaluation, the ALJ determined that the Plaintiff could not perform his past work, but in light of his age, education, work experience, and RFC, could perform other jobs that existed in significant numbers in the national economy.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] "The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40." SSR 02-1P.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997); *see also Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

**ANALYSIS**

The Court can assume, based on the RFC and questions to the VE, that the ALJ did not credit the Plaintiff's testimony that he needed to nap for one and half to two hours daily. (R. 44 (testifying that he could not remember the last time he did not take a nap).) The Plaintiff also stated that after the nap he was still tired, as he was when he woke up in the morning. When referencing the limitations the Plaintiff alleged, the ALJ noted that, prior to the hearing, the Plaintiff asserted that his impairments affected his ability to sit, stand/walk for any significant period of time, bend, lift, squat, reach, kneel, talk, hear, climb stairs, concentrate, understand, follow instructions, get along with others, and remember.

It is the ALJ's job to assess whether a claimant is exaggerating the symptoms of a medical condition. To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. Ordinarily, an ALJ's determination would be conclusive upon review, but if the ALJ based his credibility determination on errors in reasoning, rather than merely the demeanor of the witness, remand is appropriate. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Additionally, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

The ALJ provided three reasons in support of his determination that the Plaintiff's "allegations regarding conditions, symptoms, severity and limitations of function are credible only in so far as they are consistent with the . . . residual functional capacity." (R. 19.) First, he opined that the objective physical record did not fully substantiate the allegations of disabling

symptoms. Second, the Plaintiff's activities of daily living suggested that he was not as limited as he alleged and remained capable of performing work within the RFC. The third reason the ALJ provided was that the Plaintiff had made inconsistent statements regarding matters relevant to the issue of disability, which suggested "that the information provided by the claimant generally may not be entirely reliable." (R. 20–21.)

An ALJ may consider a claimant's testimony less credible if the medical evidence does not support the symptoms to the extent alleged. *See Powers v. Apfel*, 207 F.3d 431, 435–36 (7he Cir. 2000) ("The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition.") The ALJ noted that the Plaintiff had been diagnosed with obstructive sleep apnea requiring tracheostomy, but that treatment providers noted that the Plaintiff had "more energy, sleeping better" after the tracheostomy. (R. 20 (citing 10F/11,13).) The ALJ also cited a provider's post-operative notes that indicated that the Plaintiff "gradually improved with improvement in daytime sleepiness" (7F/1) and to a May 2013 sleep study report that his severe obstructive sleep apnea syndrome was "[i]mproved with the tracheostomy" (9F/2). (R. 20.) Finally, chest imaging showed "no acute disease" (7F/9). (*Id.*)

With regard to the chest imaging, the ALJ does not explain what bearing the absence of actue disease had on his credibility determination, or even to which of the Plaintiff's allegations it pertains. There is no dispute that the Plaintiff's medical records contain diagnoses for severe obstructive sleep apnea, morbid obesity, hypertension, asthma, and gastric reflux. The Plaintiff underwent uvulopalatopharyngoplasty, tracheostomy, tonsillectomy, radiofrequency reduction tongue base, intramural cautery inferior turbinates, and outfracture of inferior turbinates, all for

7

his sleep apnea. However, he still remained morbidly obese. Notes indicating that the Plaintiff had more energy, gradual improvement, and the like are too vague to cite as evidence that logically suggests that the Plaintiff was exaggerating his fatigue. Given the severity of the Plaintiff's obstructive apnea, an "improvement" in daytime sleepiness, without any concrete studies or findings, is not evidence that he did not require a mid-day nap to make it through the day. *Cf. Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled.").

In fact, the sleep study itself did not bear this out. The study revealed that the Plaintiff's respiratory disturbance index when the tracheostomy was plugged was sixty-eight episodes per hour of sleep. (R. 428.) Although the study noted improvement when the tracheostomy was unplugged, the Plaintiff still had a respiratory disturbance index of forty-three episodes per hour of sleep. (R. 429.) The difference was described as "[m]ild improvement with increased sleep efficiency and a delta rebound." (R. 428.) The report recommendations were that the Plaintiff continue with the tracheostomy unplugged, and continue with aggressive measures of alternative treatment, mainly in the form of losing weight. If symptoms continued, the Plaintiff's options would include surgical mandibular advancement by an orofacial surgeon. (R. 429.) Accordingly, it was an error in reasoning to use the sleep study report as proof that the Plaintiff had improved to the point where claims of fatigue that required a mid-day nap could not be given any credence.

Other evidence in the record appears to support the Plaintiff's claims. On March 5, 2014, the attending Otolaryngologist, Dr. William Culp, gave a "marked restriction" rating to the Plaintiff's "ability to sustain work activity for a full eight (8) hour work day, persisting at a

8

consistent pace, without frequent or lengthy rest periods or breaks." (R. 468.) The ALJ gave little weight to this opinion, reasoning, in part, that it appeared "extreme given the fact that the claimant has had only mild diagnostic imaging findings, normal deep tendon reflexes, normal extremities, normal gait with no assistive device, lungs clear to ausculation, unlabored respirations, no wheezing or rhonci, normal heart, 5/5 strength in lower extremities, and was able to walk on heels, toes, and tandem walk." (R. 21 (citing 13F/3, 20F/1–2.) The Court cannot discern from the ALJ's decision how the findings regarding the Plaintiff's lungs, chest, heart, gait, etc., relate to the symptoms and functional restrictions the Plaintiff would have experienced as a result of his severe sleep apnea. In one of the records that the ALJ cited as a source of these findings—the January 30, 2015, progress notes from the Plaintiff's family physician, Dr. Phillip Corbin—the Plaintiff reported that he continued to "have problems with significant sleep apnea and has tracheostomy in place that he uses for his CPAP at night." (R. 505.) This further suggests that the objective medical findings the ALJ cited are unrelated to his problems with sleep apnea, the condition that Dr. Culp treated and commented upon.

The ALJ may have given little weight to Dr. Culp's opinion because it "infringe[d] on a matter reserved for the Commissioner, whether the claimant is disabled." (R. 21 (criticizing the treating providers general opinions "that the claimant cannot work" because they were "not rendered with explanation as to whether such an opinion is with respect to past work, all work, or even within the definition of disability as defined by the Social Security Administration").) The Court, upon review of Dr. Culp's opinion and the relevant regulations and policy interpretation, cannot agree that he opined on a issue reserved to the Commissioner. "[T]he Social Security Administration defines medical opinions as 'statements from physicians and

9

psychologists or other acceptable medical sources that reflect judgments about the nature and severity' of a claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, physical and mental restrictions, and residual functional capacity." *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (quoting 20 C.F.R. § 404.1527(a)(2)). Some issues that a treating source might comment on are not medical issues regarding the nature and severity of an impairment, but are instead administrative findings reserved for the Commissioner. Examples of these issues include whether an individual's impairment meets or is equivalent in severity to the requirements of any impairment in the listings, what an individual's RFC is, whether an individual's RFC prevents him from doing past relevant work, how the vocational factors of age, education, and work experience apply, and whether an individual is "disabled" under the Act. 20 C.F.R. § 404.1527(e); SSR 96-5p. Dr. Culp's statement was not an opinion on any of the issues reserved for the Commissioner. Yet the ALJ's reasoning appears to suggest the opinion deserves little weight precisely because it did *not* consider the definition of disability or specify the type of work at issue—matters that *are* reserved for the Commissioner. When Dr. Culp identified the Plaintiff's impairments, reported the results of a sleep study, advised of the course of treatment, and then rated the Plaintiff's ability to "sustain work for full eight (8) hours work day, persisting at a consistent pace, without frequent or lengthy rest periods of breaks," he was commenting on the nature and severity of the Plaintiff's documented sleep apnea and morbid obesity, including the accompanying physical and mental restrictions that would interfere with his ability to sustain a consistent pace for a full day of work. (R. 468.)

    The regulations provide that more weight is generally given to the opinion of treating sources who have (1) examined a claimant, (2) treated a claimant frequently and for an extended

period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, and (5) offered opinions that are consistent with objective medical evidence and the record as a whole. 20 C.F.R. § 404.1527(c)(2)(i), (ii). Moreover, even when a treating physician's opinion does not deserve "controlling weight," the ALJ must consider certain factors—namely, (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) how supportable the doctor's medical opinion is, (4) how consistent the doctor's opinion is with the record, (5) the doctor's specialization, and (6) other factors that might support or contradict the doctor's opinion—to determine what weight to give the opinion. 20 C.F.R. § 404.1527(c)(2). Many of these factors were left unmentioned when the ALJ assigned little weight to Dr. Culp's opinion. The Court is not deciding the weight to assign to Dr. Culp's opinion. However, because it should not have been rejected on the ground that it opined on issues reserved for the Commissioner, and the objective medical findings the ALJ cited were unrelated to sleep apnea, the case will be remanded for the ALJ to consider the relevant factors.

The ALJ also thought that the Plaintiff's activities of daily living suggested that he was not as limited as alleged and remained capable of performing work within the RFC. Although "it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility," it must be "done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (cautioning "that a person's ability to perform daily activities, especially if th[ey] can be done only with significant limitations, does not necessarily translate into an ability to work full-time"). "An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."

11

*Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (internal citation omitted). Here, the ALJ discussion of the Plaintiff's daily activities does not take into account how the Plaintiff performed those activities. For example, the ALJ notes that the Plaintiff was able to prepare meals, perform housework, clean, vacuum, do dishes, wipe down counters, read, watch television, go to car shows, drive, and shop despite his symptoms. But the Plaintiff's testimony regarding these activities reveals that he performed them sporadically and in a restricted capacity to account for his fatigue. *See Roddy*, 705 F.3d at 639 (criticizing ALJ's reliance on claimant's ability to perform household tasks because inability to get through the day without lying down every hour does not indicate ability to work even a sedentary job). After he woke at around 9:00 in the morning, the Plaintiff would "do a few dishes, try to do a little vacuuming, a little bit of housework." (R. 44.) However, after his noon meal, he would nap. He could only run the vacuum for long enough to clean "one little room at a time and then I got to rest." (R. 45.) He could sweep or mop "[a] small room." (*Id.*) The meals were prepared using prepackaged food. (*Id.*) Shopping was done with his wife, for about twenty minutes before he found a place to sit down. (R. 47.) He did not spend much time reading because it usually made him "pretty tired." (R. 49.) The Plaintiff would drive, but only in the morning when he was not as tired. (R. 47.) At car shows, he did a lot of sitting and resting in between trying to look at a few cars. (R. 50.) The Plaintiff watched television one hour in the morning and a couple hours when his wife came home from work. The ALJ cites the Plaintiff's television watching as a daily activity that suggests he is not as limited as alleged but does not explain how it conflicted with the Plaintiff's claimed fatigue. In this context, the Court does not grant deference to the ALJ's conclusion regarding his daily activities. *See Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (noting

12

that unsupported judgments regarding a plaintiff's ability to perform the activities of daily living "are not the sort of credibility determinations entitled to deference").

As a third reason for concluding that the Plaintiff exaggerated his symptoms, the ALJ noted various perceived inconsistent statements that suggested the Plaintiff's information may not be entirely reliable. The ALJ cited two examples. First, the Plaintiff testified at the May 2015 hearing that he had very little progress with his tracheostomy, but May 2013 records indicated that his severe obstructive sleep apnea syndrome was "[i]mproved with tracheostomy." (R. 21 (quoting 9F/2).) Second, the ALJ points to the Plaintiff's hearing testimony that his back pain was a 7.5 with medication since 2012 and that his doctor told him to use a cane. The ALJ thought this inconsistent with records from October 2013 that indicated a normal gait with no assistive device, 5/5 strength in lower extremities, no atrophy, negative straight leg raise test, and ability to walk on heels, toes, and tandem walk. In the two examples the ALJ provided, the Plaintiff's statements are not compared to any other statement, and thus cannot be characterized as "inconsistent information provided *by the claimant*." (R. 20 (emphasis added).) Rather, the examples provide a comparison of the Plaintiff's statements to another portion of the record. In this way, the ALJ's third rationale is no different than his first rationale—that there is a lack of objective medical findings to support the allegations.

As noted above, the reference in the sleep study to severe obstructive sleep apnea syndrome being "improved" is too conclusory to be probative of whether the Plaintiff's continued claims of fatigue and limited improvement obtaining meaningful sleep were unreliable. Regarding the cane, the Plaintiff's did not testify that the doctor told him to use a cane; he stated that during his last visit he talked to his doctor about using a cane "like for car

13

shows and stuff like that" and that his doctor said yes. (R. 56.) The ALJ's decision does not explain how a normal gait during a 2013 consultative exam means that the Plaintiff's later desire to acquire a cane for use in settings like a car show was misleading or unreliable. Moreover, the Plaintiff himself thought that he could stand or walk for twenty minutes before his back pain would become an issue. Unless the observation of a normal gait during the consultative exam was after twenty minutes of walking or standing, it was error to use it as evidence that the Plaintiff was not credible.

Having concluded that the ALJ's credibility determination is not supported by substantial evidence, the Court makes additional comments for consideration on remand. In finding that the Plaintiff's obesity did not cause functional limitations beyond those cited in the RFC, the ALJ discussed only how the impairment affected his reflexes, extremities, gait, lungs, heart and strength. He made no mention of how the Plaintiff's obesity impacted his sleep apnea and, correspondingly, his ability to stay alert for an eight-hour workday. *Cf. Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (recognizing that when considering a claimant's narrative regarding certain restrictions, the ALJ must determine the effect of obesity on that ability); *see also* SSR 02-1p (noting that the effects of obesity for people with sleep apnea may include "drowsiness and lack of mental clarity during the day," which "may affect the individual's physical and mental ability to sustain work activity"). Additionally, the Plaintiff complains that the ALJ did not give any weight to his significant work history. The Seventh Circuit has observed that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Loveless*, 810 F.3d at 508 (first quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); then quoting *Rivera v. Schweiker*, 717 F.2d

719, 725 (2d Cir. 1983)). However, "work history is just one factor among many, and it is not dispositive." *Id.*; *see also Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) ("An ALJ is not required to consider a claimant's work history."). As long as substantial evidence supports the ALJ's credibility determination, silence on this factor will not negate that evidence. *Loveless*, 810 F.3d at 508. For sake of completeness, on remand the ALJ should consider how the Plaintiffs' work history impacts his credibility.

Final decisions of the Social Security Administration must be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g). The decision must construct a logical bridge between the facts in the record and its ultimate conclusions. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The ALJ's decision, while quite thorough in certain regards, does not construct that bridge when it comes to the credibility of the Plaintiff or to the medical opinion of his treating physician. Accordingly, the Court cannot say on this record that the ALJ's decision was supported by substantial evidence. On remand, the ALJ should also address the Plaintiff's concern that the opinions of two of his other treating physicians were not given their due weight.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this Opinion and Order.

SO ORDERED onSeptember 14, 2017.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT